NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-362

JAMES BING, JR.

vs.

DEPARTMENT OF CORRECTION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, James Bing, Jr., challenged an adverse finding of a disciplinary board by filing an action pursuant to G. L. c. 249, § 4.  After a hearing, a judge of the Superior Court issued an order denying Bing's motion for judgment on the pleadings and allowing the cross motion of the defendant, Department of Correction (department).  Bing appeals from the judgment.  We affirm.

Discussion.  The following facts are undisputed.  In February 2022, during a search of Bing's prison cell, correction officers found a piece of paper that reportedly had an "odd texture."  The correction officers, suspecting that the paper contained an unauthorized substance, placed the paper into

evidence and sent it to the University of Massachusetts Medical School Drugs of Abuse Laboratory (laboratory).  On April 15, 2022, the laboratory certified that "[s]creening test(s)" showed that the paper tested positive for synthetic cannabinoid, and the results were notarized.  On May 13, 2022, following receipt of the positive test result, a correction officer wrote a disciplinary report charging Bing with unauthorized use or possession of drugs, in violation of 103 Code Mass. Regs. § 430.24(2-11) (2019), and two other offenses.  After a disciplinary hearing, the hearing officer found sufficient evidence to support a guilty finding as to the charge of unauthorized use or possession of drugs, and dismissed the other charges.

"Our review of a disciplinary proceeding is based on whether the record contains substantial evidence to support the hearing officer's decision" (citation omitted).  Shea v. Department of Correction, 103 Mass. App. Ct. 369, 372 (2023).  "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, . . . taking into account whatever in the record fairly detracts from the weight of the evidence" (quotation and citation omitted).  Id.  "The court may not displace the hearing officer's exclusive function to weigh the credibility of the witnesses and to resolve factual disputes in the testimony" (quotation and citation omitted).

2

Id. at 372-373. "We may correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff" (quotation and citation omitted). Winthrop Retirement Bd. v. LaMonica, 98 Mass. App. Ct. 360, 366 (2020).

Bing contends that the evidence on which the hearing officer relied was insufficient to support a guilty finding because the forensic test of the paper was a "screening" test and not a "confirmation" test. The department's substance abuse identification and testing policies state that qualified staff "shall screen [unknown, unauthorized substances] using a narcotic field test kit in an attempt to identify the substance." 103 DOC § 525.08 (2021). If the quantity of the unknown substance is limited, however, it "shall not be field tested, but may be sent out for identification via a laboratory test." 103 DOC § 525.08(B)(2). Also, if a substance cannot be identified by field testing, it "may be sent to an outside laboratory for testing and identification." 103 DOC § 525.08(C)(1). On the other hand, if an unknown substance is identified by field testing and there is reason to believe that an inmate has committed a disciplinary offense, the inmate must be served with a form giving him the option to request a "[c]onfirmation [t]est." 103 DOC § 525.08(C)(2). The policy definitions contemplate the screening test is to be performed by

3

department staff.  103 DOC § 525.01 (2021).  Similarly, the department has written its own definition of a "[c]onfirmation [t]est," defining it as "[a] forensic test conducted by a certified laboratory to detect the presence of unauthorized drugs."[1]  Id.  The definition of [c]onfirmation [t]est concludes, "The results of a laboratory test shall always override the results of any screening results obtained by [d]epartment staff."  Id.

Here, the department effectively skipped "step one," field testing, by sending the substance directly to the laboratory for testing.  As noted, the department's policy authorizes this action.  Thus, to the extent Bing is arguing that the department failed to comply with its policy, we disagree.  The policy allows the department to send an unknown substance to an outside laboratory for identification without first conducting a field test.  Thus, we discern no error in this regard that adversely affected Bing's rights.  See Winthrop Retirement Bd., 98 Mass. App. Ct. at 366.

---

[1] The department's definitions of a "screening" test and a "confirmation" test are not consistent with how a scientist from an independent certified laboratory would use those terms. While the department may define terms in its regulations, the department should expect that deviating from well-known definitions will cause unnecessary confusion and invite litigation.  The department compounds the confusion by using the phrase "field testing" interchangeably with "screening."

4

The question then is whether the results from the laboratory, in combination with the other evidence before the hearing officer, constituted substantial evidence supporting the hearing officer's decision.  The substantial evidence standard is highly deferential to the agency decision maker and is less stringent than preponderance of the evidence.  See Duggan v. Board of Registration in Nursing, 456 Mass. 666, 674 (2010).  Under the substantial evidence standard, "an agency's conclusion will fail judicial scrutiny if the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary" (quotation and citation omitted).  Id.  That is not the case here.  Rather, the hearing officer's decision was supported by substantial evidence, as the finding that Bing possessed an unauthorized substance was supported by the testing of an outside laboratory.

We are unpersuaded by Bing's suggestions that substantial evidence is lacking because screening tests, such as those used by the department, are presumptively unreliable.  Although the laboratory used the term "screening," that did not transform the laboratory's test into a screening test within the meaning of the department's policy.[2]  "Screening," as used in the policy,

_____

[2] At the same time, the laboratory's certification of analysis states, "Screening test(s) indicate a presence of a SYNTHETIC CANNABINOID."  Because the department's definition of

5

refers to the in-house field test performed by qualified staff, which requires a confirmation test by a certified laboratory if requested by the inmate. 103 DOC § 525.08. As Bing notes, a Superior Court judge has previously found the department's field test to be unreliable,[3] but there is no evidence in this record that the certified laboratory's test is unreliable or generates inaccurate results. Bing has therefore failed to show that the evidence "points to no felt or appreciable probability" that he possessed an unauthorized substance or "points to an

---

a confirmation test requires a test by a certified laboratory, the certification fits the department's definition.

[3] Specifically, the judge found, based on "overwhelming evidence" presented to him in a putative class action, that the "NARK II" field test being used by the department was "a highly unreliable means of determining whether a particular mail item actually contains any illicit synthetic cannabinoids." Green vs. Massachusetts Dep't of Correction, Mass. Super. Ct., No. 2184CV02283-C (Suffolk County Nov. 30, 2021). Thereafter, the department amended its standard operating procedures to provide that no inmate could be disciplined for introducing contraband into a facility unless an outside laboratory tested the substance and returned a positive result. See Shea, 103 Mass. App. Ct. at 375 n.12.

overwhelming probability of the contrary" (citation omitted).
Duggan, 456 Mass. at 674.

Judgment affirmed.

By the Court (Henry, Shin & Brennan, JJ.[4]),

*Paul Little*

Clerk

Entered:  May 1, 2025.

---

[4] The panelists are listed in order of seniority.